UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ANNIE B. POWELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case  No. CV 12-11044 AJW |
| | ) | |
| v. | ) | MEMORANDUM OF DECISION |
| | ) | |
| CAROLYN W. COLVIN[1], | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed her application for benefits in April 2009, alleging that she had been disabled since November 18, 2008.  [JS 2].  Plaintiff's application was denied.  [JS 2; Administrative Record ("AR") 87-91].  Plaintiff requested an administrative hearing, which was conducted before an administrative law judge (the "ALJ") on February 2, 2011.  [AR 46].  Plaintiff was represented by counsel during the hearing and

---

[1]   Carolyn W. Colvin is substituted as defendant in place of her predecessor in office, Michael J. Astrue.  See Fed. R. Civ. P. 25(d).

testified on her own behalf. [AR 48-73]. Testimony also was received from a vocational expert. [AR 73-79]. In an April 23, 2011 written hearing decision that constitutes the Commissioner's final decision in this case, the ALJ found that plaintiff had severe impairments consisting of left shoulder pain-sprain; left ankle pain, post surgery; and migraine headaches by history. [JS 2-3; AR 29]. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of light work, and that her RFC did not preclude her from performing her past relevant work as a security guard. [AR 30-31, 33-34]. Accordingly, the ALJ concluded that plaintiff was not disabled through the date of his decision. The Appeals Council denied plaintiff's request for review. [AR 1, 5-7].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Past relevant work**

Plaintiff contends that the ALJ's finding that plaintiff's RFC did not preclude performance of her past relevant work as a security guard is not supported by substantial evidence. [JS 4-11, 15-16].

A social security disability claimant bears the burden of proving that she cannot perform either the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (quoting Social Security Ruling ("SSR") 82-62, 1982 WL

31386); see also Burch, 400 F.3d at 679; Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986). The ALJ's obligation is "to make the requisite factual findings to support" the conclusion that the claimant can perform past relevant work. "This is done by looking at the residual functional capacity and the physical and mental demands of the claimant's past work." Pinto, 249 F.3d at 844-845 (quoting 20 C.F.R. §§ 404.1520(e) and 416.920(e)). Information from the Dictionary of Occupational Titles ("DOT") or the testimony of a vocational expert may be used to ascertain the demands of an occupation as ordinarily required by employers throughout the national economy at steps four and five of the sequential evaluation procedure. See SSR 00-4p, 2000 WL 1898704, at *2. Further, "[t]he claimant is in the best position to describe just what he or she did in [past relevant work], how it was done, what exertion was involved, what skilled or semiskilled work activities were involved, etc." See SSR 82-41, 1982 WL 31389, at *4.

A vocational expert testified that plaintiff's past work as a security guard corresponded to DOT occupational classification number 372.667-034. [AR 75]. He testified that this job is performed at the light exertional level. The expert also explained that the DOT classifies this work as having a Specific Vocational Preparation 3[2], but that he believed the work could also be performed as SVP 2, or even SVP 1, which is unskilled work. [AR 75, 79]. The ALJ posed a question about a hypothetical person who could perform light work with the additional restrictions that the person could not climb ladders, ropes and scaffolds, but could occasionally climb stairs and ramps, and occasionally stoop, kneel, crouch, crawl and balance. [AR 76]. The ALJ further described the hypothetical person as someone who is right-hand dominant, who can frequently push or pull with the left upper extremity, and who can occasionally lift and reach with the left upper extremity but not over the shoulder level. [AR 76]. Finally, the ALJ limited the hypothetical person from exposure to hazardous machinery, unprotected heights, or other high-risk

---

[2]    "Specific Vocational Preparation" ("SVP") is a term of art used in the DOT to classify "how long it generally takes to learn the job." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C. The DOT defines SVP 1 as "[s]hort demonstration only," SVP 2 as "[a]nything beyond short demonstration up to and including 1 month," and SVP 3 as "[o]ver 1 month up to and including 3 months." DOT, Appendix C. "Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; [and] semi-skilled work corresponds to an SVP of 3-4 . . . ." SSR 00-4p, 2000 WL 1898704, at *3.

hazardous or unsafe conditions. [AR 76]. The vocational expert testified that the hypothetical person could perform plaintiff's past relevant work as a security guard generally and as actually performed. [AR 76]. The ALJ asked the vocational expert to tell him if his testimony conflicted with the DOT. The vocational expert indicated that the only deviation was his explanation that he believed the job could be obtained at a lower SVP. [AR 79]. The ALJ accepted this testimony and added that plaintiff could perform her past relevant work at SVP level 3 because she had undergone formal training to be certified by the State of California to perform that work and she had obtained her "Guard Card." [AR 53-54, 75].

The vocational expert's testimony in response to a hypothetical question incorporating all of the limitations the ALJ ultimately included in his RFC finding was substantial evidence supporting the ALJ's step-four finding. See Bayliss, 427 F.3d at 1218 ("A vocational expert's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required."). The ALJ also permissibly relied on plaintiff's testimony and earning records to support the determination that she could perform her past relevant work as actually performed. [JS 34]. While the ALJ did not describe plaintiff's testimony regarding her past relevant work in his discussion of step four, it is clear that the ALJ was referencing the detailed analysis of plaintiff's testimony that the ALJ provided in support of his credibility determination. [AR 34]. Specifically, plaintiff testified she worked as a security guard at Securitas Security Services USA ("Securitas") from 2008 to 2009, and that she stopped working there because her employer would not reassign her when she returned after a medical leave. [AR 53]. Plaintiff said that she took "two or three weeks" of medical leave, and when she returned to work, "they wouldn't put me back on the post." [AR 72; see also AR 53]. Plaintiff testified that she was not sure of the reason she had been on medical leave, but that it could have been "when I twisted my ankle or when I was sick with the flu or whatever it was that had me down." [AR 72]. She said that her employer did not give her a specific reason for not reassigning her, but that she "th[ought] it was missing too many days at work, you know, even though I was still seeing a doctor, still, you know, I wasn't there enough to do what they wanted me to do." [AR 72-73]. Plaintiff testified that after she stopped working at Securitas, she looked for other jobs in security and for customer service and warehouse jobs, "putting in anything I could put in." [AR 53]. Plaintiff also testified that was still actively looking for work at the time of the hearing, and that she had applied for a job at a Target warehouse just the week before. [AR 53-54]. She said that she had submitted an application for

1    warehouse or assembly line work but would take "whatever I can get." [AR 54].  When the ALJ inquired

2    whether plaintiff would go back to Securitas if they asked her to come back to work, she replied that she

3    would renew her Guard Card and she "surely will" go back.  [AR 67].

4            Plaintiff's testimony about her past work as a security guard and her active attempts to return to that

5    (or any) job supports the inference that she could still perform her past relevant work as actually performed.

6    Therefore, the ALJ did not err in relying on that evidence along with other substantial evidence in the record

7    to conclude that plaintiff was not precluded from performing her past security guard job as actually

8    performed.  [AR 53, 71-73; see also AR 135, 143, 146 (earnings records), 259  (plaintiff's statement to an

9    examining physician that she worked in security until she was "fired"), 308 (plaintiff's statement to a

10   treating physician that she was "laid off")].  See Courter v. Comm'r, Soc. Sec. Admin., 479 F. App'x 713,

11   722 (6th Cir. 2012) (holding that the ALJ properly found that the claimant could perform her past relevant

12   work based on her admission that she was still capable of performing that work); Kimble v. Colvin, 2013

13   WL 1290651, at *10 (E.D. Wash. Mar. 27, 2013) (holding that the plaintiff could meet the demands of her

14   past relevant work as a housekeeper where she admitted that she performed various housekeeping jobs for

15   over one year, but reversing because the ALJ failed to establish whether that work amounted to substantial

16   gainful activity); Rodriguez v. Astrue, 2009 WL 2750071, at *5 (D. Idaho Aug. 25, 2009) (holding that

17   substantial evidence supported the ALJ's determination that the claimant could perform her past relevant

18   work as a fast food worker where she worked at McDonald's for 17 years, and said that she can work at her

19   own pace and could return to McDonald's if they asked her to come back).

20           Plaintiff contends that the position of security guard requires frequent reaching but that the ALJ

21   found that she can only occasionally reach with her left arm, and cannot reach with that arm over her

22   shoulder.  [AR 8-9].  The ALJ correctly noted in his decision that the DOT job of security guard requires

23   frequent reaching.  [AR 34].  See DOT, 372.667-034, 1991 WL 673100.  However, the DOT does not

24   specify that frequent reaching requires the use of both arms.  DOT, 372.667-034, 1991 WL 673100; see

25   Carey v. Apfel, 230 F.3d 131, 146 (5th Cir. 2000) (stating that the DOT "does not contain any requirement

26   of bilateral fingering ability or dexterity . . . .").  In the RFC, which plaintiff does not challenge except as

27   discussed below, the ALJ took plaintiff's left extremity limitations into consideration [AR 31], and found

28   that she was able to perform the security guard job because she was still capable of frequent reaching with

her right upper extremity. [AR 34]. Plaintiff has failed to establish that this was error. See Carey, 230 F.3d at 146 (holding that a vocational expert's testimony that the claimant could perform work as cashier or ticket seller notwithstanding amputation of his non-dominant left hand was not inconsistent with the DOT's requirement of occasional or frequent handling and fingering for those jobs because the DOT does not require bilateral manual dexterity); Landrum v. Colvin, 2013 WL 3819675, at *6 (C.D. Cal. July 23, 2013) (rejecting the argument that the claimant could not perform jobs that require frequent reaching due to limitations in his ability to reach overhead with his right extremity because the DOT did not require frequent reaching with both arms, and the record showed that claimant had no limitation with his left arm); Palomares v. Astrue, 887 F. Supp. 2d 906, 920 (N.D. Cal. 2012) (holding that where the vocational expert testified that his answers were consistent with the DOT and specifically considered the evidence indicating that the claimant had reaching and lifting limitations on his left side only, there was no conflict between the vocational expert's testimony that a person so limited could perform a DOT job that required "constant reaching" because "the DOT does not require constant reaching with both arms," and collecting cases); Diehl v. Barnhart, 357 F. Supp. 2d 804, 809, 822 (E.D. Pa. 2005) (noting that the vocational expert testified that security guard jobs "are generally cited for individuals who have limited upper extremity use to one arm," and holding that there was "no material conflict" between the DOT and the vocational expert's testimony that a person who could occasionally use his dominant right upper extremity and frequently use his left upper extremity could perform DOT jobs that require frequent reaching, including the job of security guard).

Plaintiff also contends that the ALJ did not properly ascertain the demands of her former work and then compare the demands with her present capacity. [JS 5-6]. However, the ALJ specifically stated that "in comparing the [plaintiff's RFC] with the physical and mental demands of [security guard] work, the undersigned finds that the claimant is able to perform it as actually and generally performed." [AR 34]. Contrary to plaintiff's assertion, it was not "impossible" for the ALJ to make this comparison based on the evidence in the record. [JS 9-10]. As noted above, the ALJ could properly rely on plaintiff's own statements and testimony that she could perform the demands of her previous work as she actually performed it, and that she was seeking to return to the same work at the time of the hearing. See Tate v. Astrue, 2012 WL 4005976, at *6 (S.D. Cal. Sept. 11, 2012) (rejecting the argument that the ALJ did not

include specific and detailed findings regarding plaintiff's actual past relevant work and her limitations on repetitive fingering in determining her past relevant work as a cashier where the claimant testified at the hearing that she worked as a cashier in two previous jobs); <u>Bustos v. Astrue</u>, 2012 WL 5289311, at *8 (E.D. Cal. Oct. 23, 2012) (holding that the ALJ did not err in finding that the claimant could perform his past relevant work where the ALJ relied on the vocational expert's testimony in response to a hypothetical that reflected the RFC finding, and the claimant essentially conceded at the administrative hearing that he could do his past relevant work).

**Nonexamining physician's opinion**

Plaintiff contends that the ALJ improperly ignored a limitation to standing and walking for four hours found in the opinion of nonexamining state agency physician M. Bayar, M.D. [JS 16-18, 20].

As mentioned, the ALJ found plaintiff had an RFC with a restricted range of light work, which included the ability to stand and walk up to six hours in an eight hour work day. [AR 30]. In making this determination, the ALJ stated that he relied in part on an August 12, 2009 state agency consultative examination by Dr. Adi Klein. Dr. Klein opined that plaintiff could perform the exertional requirements of light work with certain nonexertional limitations. Dr Klein's opinion expressly included the ability to sit, stand, or walk for six hours in an eight-hour workday. [AR 263].

The ALJ also said that he relied on an August 27, 2009 nonexamining RFC assessment by Dr. Bayar. [AR 33]. Dr. Bayar's functional assessment was nearly identical to Dr. Klein's evaluation, but included additional postural limitations, and, as relevant here, a limitation to standing and walking four hours in an eight-hour workday. [AR 266-267; JS 16, 18].

In summarizing this evidence the ALJ stated that Dr. Klein's opinion was based upon clinical data and diagnostic findings gathered during the evaluation, and added that Dr. Klein's credentials, training, and experience as a board-certified internist bolstered the reliability of his opinion. [AR 33]. The ALJ stated he gave "generous weight" to Dr. Bayar's assessment as well, "given . . . [his] review of the medical records available at the time and its consistency with Dr. Klein's report." [AR 33]. The ALJ further stated that Dr. Bayar also "appropriately extended [plaintiff] 'the benefit of the doubt' in finding that greater functional limitations are reasonably supported in this case" and incorporated Dr. Bayar's "occasional" postural limitations into the RFC. [AR 30, 33, 263, 267]. However, the ALJ did not mention Dr. Bayar's limitation

to four hours of standing and walking, and did not include it in his hypothetical to the vocational expert or in the RFC.  [AR 30-31, 76].

Plaintiff contends that the ALJ erred in ignoring the four-hour limitation that appears in Dr. Bayar's assessment.  Plaintiff argues that this additional two hour limitation difference between the RFC and Dr. Bayar's standing and walking limitation is important because "it is 'doubtful' plaintiff could perform her past relevant work []as a security guard which entails among other responsibilities 'patrol[ing].'"  [JS 17-18].  Further, it would impact her ability to do light work, which requires the ability to stand and/or walk for six hours.[3]  [JS 20].

An ALJ is "not bound by any findings made by State agency medical or psychological consultants" but must consider and evaluate their findings "using the relevant factors in paragraphs (a) through (e) of [20 C.F.R. §§ 404.1527, 416.927], such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions," and "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ."  20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); see also SSR 96-6p, 1996 WL 374180, at *1-*2; Sawyer v. Astrue, 303 F. App'x. 453, 455 (9th Cir. 2008) ("An ALJ is required to consider as opinion evidence the findings of state agency medical consultants; the ALJ is also required to explain in his decision the weight given to such opinions.").

The ALJ's failure to explicitly acknowledge or reject Dr. Bayar's standing and walking limitation was not legal error.  Dr. Bayar never examined plaintiff.  If a physician does not examine the plaintiff, his

---

[3]   "Light work" involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  The full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday.  Sitting may occur intermittently during the remaining time.  In addition, occasional bending from the waist is required to lift and carry objects.  Unlike work at the medium level, frequent bending or stooping is not required for light work.  Moreover, limitations in an individual's ability to climb, bend, kneel or crawl will not significantly erode the occupational base at either the light or medium level of exertion.  See 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 85-15, 1985 WL 56857, at *6-*7; SSR 83-10, 1983 WL 31251, at *5-*6; SSR 83-14, 1983 WL 31254, at *4-*5.

opinion, based solely on documentary history and objective laboratory evidence can not, standing alone, be afforded substantial weight. Lester v. Chater, 81 F.3d 821, 831-823 (9th Cir. 1995) (citing Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984)). When supported by other evidence in the record, however, the opinion of a non-examining physician may serve as substantial evidence. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989). Plaintiff has not cited to any other evidence supporting Dr. Bayar's opinion that plaintiff was limited to four hours of standing and walking. Dr. Klein, the only treating or examining physician to assess plaintiff's functional abilities, opined that plaintiff could perform the exertional requirements of light work, including sitting, standing, and walking for six hours in an eight-hour day. The ALJ discussed Dr. Klein's evaluation in detail and clearly credited it. See Andrews, 53 F.3d at 1040-1041 (explaining that more weight is given to the opinions of treating and examining physicians because they have a greater opportunity to know and observe the patient as an individual). Dr. Klein based his opinion on his examination and on a review of "[a]ll medical documentation submitted," including an x-ray report and a CT scan report. [AR 262-263]. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

The ALJ explained he was giving weight to Dr. Bayar's nonexamining opinion based on its "consistency" with Dr. Klein's opinion and Dr. Bayar's review of medical records available to him at the time. [AR 33]. Dr. Bayar's opinion plainly is *not* consistent with Dr. Klein's opinion insofar as Dr. Bayar limited plaintiff to four hours of standing and walking. The full range of light work requires the ability to stand and walk, off and on, for six hours in an eight-hour day, and Dr. Klein unquestionably found that plaintiff could do so. Limiting plaintiff to four hours of standing and walking is inconsistent with Dr. Klein's opinion. Such a limitation also is inconsistent with the ALJ's finding that plaintiff can perform the DOT job of security guard, which is light work.

It is true that Dr. Klein also found no postural limitations, and the ALJ nonetheless adopted Dr. Bayar's "occasional" postural limitations in climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling. [AR 30-31, 267]. However, those occasional postural limitations were not

1  materially inconsistent with Dr. Klein's opinion because they do not significantly restrict the ability to

2  perform work at the light exertional level.  See note 3, supra.

3          Although the ALJ's decision is not a model of clarity in this respect, an ALJ is not required to "recite

4  [any] magic words" to justify rejecting evidence, provided that the ALJ's grounds for doing so can

5  reasonably be inferred from his or her decision.  Magallanes, 881 F.2d at 755 ("[O]ur cases do require such

6  an incantation. As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate

7  inferences from the ALJ's opinion. It is proper for us to read the [ALJ's decision], and draw inferences

8  relevant to [the rejected evidence], if those inferences are there to be drawn."); see also Batson v. Comm'r

9  of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if

10  supported by inferences reasonably drawn from the record, and if evidence exists to support more than one

11  rational interpretation, we must defer to the Commissioner's decision[.]") (citing Gallant, 753 F.2d at

12  1452–1453; Morgan, 169 F.3d at 599).  It can reasonably be inferred from the ALJ's written decision as a

13  whole that he permissibly rejected Dr. Bayar's four hour standing and walking limitation because that

14  limitation was not consistent with Dr. Klein's opinion that plaintiff could meet the exertional demands of

15  light work and lacked the support of other substantial evidence in the record.  Accordingly, plaintiff's

16  contentions lack merit.

17                                          **Conclusion**

18          For the reasons stated above, the Commissioner's decision is supported by substantial evidence and

19  reflects application of the proper legal standards.  Accordingly, the Commissioner's decision is **affirmed**.

20  **IT IS SO ORDERED.**

21

22  December 19, 2013

23

24                                          _____
                                            ANDREW J. WISTRICH
25                                          United States Magistrate Judge

26

27

28

                                            10